[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was heard as a contested custody matter. The plaintiff, Barry Kilcran filed a Petition for Custody with the court on February 11, 1992. The defendant, Sherry Lynn Fields, filed an Answer to the plaintiff's complaint and a Cross Complaint on December 6, 1993. In this matter the plaintiff acted pro se although when the Petition for Custody was filed, he was represented by an attorney who subsequently withdrew from CT Page 6417 the case. At issue in this case is the custody of Kimberly Kilcran who was born on April 16, 1983. The plaintiff is Kimberly's father and the defendant is her mother. The plaintiff and defendant have never been married to each other. The parties met in 1982 after the defendant was divorced from her husband. The defendant has two children of her marriage, a daughter aged 15 and a son aged 13. The parties began living together about one year after they met and continued to do so until November 1991 when they separated. Shortly thereafter the plaintiff filed his "Petition for Custody". On March 16, 1992 the parties signed a stipulated agreement that among other things stated the custody of Kimberly would be shared jointly by them with the plaintiff (father) being the custodial parent with specific visitation being given to the defendant (mother). Also on that date the matter was referred to the Family Relations Office for a Custody Study and a Visitation Study. On July 27, 1992 the parties signed another stipulated agreement and the court approved it which gave sole and legal custody of Kimberly to the mother pendente lite and the father was given no visitation rights to nor was he to have any contact with Kimberly pending further order of the court. This order is currently in effect at this time. Also on that date on motion of the defendant, the court ordered a Custody Study and Report and a Visitation Study and Report. This was completed and is Exhibit 1.[1]
Kimberly Kilcran is an eleven year old child who has an I.Q. of 58. According to the testimony of Sylvia Richard, the Family Relations Counselor who did the Custody and Visitation Study and Report in this matter, she is educable mentally retarded and will always be a special education student. She has suffered from seizures since she was two years old. Because of these seizures she has to be on medication. In addition Kimberly has developed catatonic shut downs" whereby she becomes limp and at times appears to be unconscious with her eyes rolled back in her head. At times these seizures have appeared to be self imposed or psychosomatic. Also, Kimberly suffers from a mild form of cerebral palsy and has a speech impediment. Thus it is obvious that Kimberly has many special needs that must be addressed.
Kimberly had thirty six seizures between November 1991 and July 20, 1992 according to the testimony of Sylvia Richard. During most if not all of that time Kimberly's custodial parent was her father. After the plaintiff and defendant ceased living CT Page 6418 together in November, 1991, the defendant and her three children including Kimberly lived with a friend for a month or so. Then they all moved to the Amos House in Danbury which is a transitional and structured housing program for mothers and their children (Exhibit 1, page 4).
Mrs. Fields stated that on July 19, 1992, the plaintiff came to the Amos House to pick up Kimberly where she had been visiting her. Kimberly began acting out and shaking. Kimberly ran and hid in another area of the house where she was found by another resident. Kimberly then told this resident that her father was sexually abusing her. (Exhibit 1 page 10). When this was brought to the attention of the defendant she called the Danbury Police and other agencies. That night the Danbury Police interviewed Kimberly and the following day the defendant took her to the Danbury Hospital Clinic to be examined medically. She was examined there by Doctor Constance Hiller. At this time Kimberly was only nine (9) years old. Mrs. Field testified that even now Kimberly acts out by making believe her mouth is taped and her hands are handcuffed. She feels this is a result of the plaintiff handcuffing Kimberly's hands and taping her mouth when he had custody of her. Mrs. Fields testified that Kimberly has told her that the plaintiff forced her to have oral sex and forced coffee grounds on her. Mrs. Fields testified that Kimberly becomes very upset if she sees a station wagon because she is afraid it is the plaintiff.
Linda Foster of the Child Guidance Clinic in Waterbury testified that she counsels Kimberly. She has seen her every week for one hour for the past year and she feels she will have to continue to see her for three to six more months. Ms. Foster is a Clinical Social Worker with a Masters Degree. She stated that Kimberly becomes very agitated and scared when you mention the plaintiff's name to her. On cross examination by the plaintiff who was acting "pro se" in this matter, Ms. Foster stated that she did not feel anyone planted anything in Kimberly's head about her father because of Kimberly's mental capacity. She recommended that custody of Kimberly be given to the defendant and that the plaintiff have no contact with Kimberly.
Sylvia Richard, a Family Relations Office Counselor in the Waterbury Superior Court, did a very detailed and well written custody and visitation study report which is Exhibit 1. She testified at trial that Kimberly has had no seizures or "catonic CT Page 6419 shutdowns" for a year. Ms. Richard testified that Kimberly told her about bondage, chains etc. and quivered when talking about this. Kimberly also stated to Ms. Richard that the plaintiff (father) had touched her genitalia. Ms. Richard stated that Kimberly is afraid of the plaintiff coming and taking her with him. She testified that the plaintiff never demonstrated an ability to relate to Kimberly. She further testified that Kimberly related details about sexual abuse which she could not have been coached to say given her mental abilities. Ms. Richard recommends custody of Kimberly be given to the defendant (mother) and that the plaintiff (father) have no contact with the child for a minimum of one year or until further order of the court. Ms. Richard testified that the defendant (mother) has demonstrated an ability to meet Kimberly's needs and that she is an effective advocate for the child.
The defendant (mother) has had three psychiatric hospitalizations in the past, namely three or four years ago, February 10 to February 24, 1992 and September 10 to September 17, 1993.
Doctor Constance Hiller testified that she worked at the Danbury Hospital Pediatric Unit between 1988 and 1993. During that time she saw Kimberly on two occasions, namely June 23, 1992 and July 20, 1992. On June 23, 1993 Dr. Hiller saw Kimberly, her mother and father and half brother Shawn at the Danbury Hospital. Dr. Hiller examined Shawn but not Kimberly. When the plaintiff (father) entered the room Kimberly immediately clung to the defendant (mother) and repeatedly said she did not want to go with the plaintiff. Dr. Hiller testified that because of Kimberly's reactions to her father she filed a report of suspected child abuse with the Department of Children and Youth Services (Exhibit MC-1). Dr. Hiller next saw Kimberly on July 20, 1992 and examined her for alleged sexual abuse which was alleged to have taken place on July 19, 1992. Dr. Hiller testified that Kimberly told her that the plaintiff had touched her (Kimberly's) private parts, he would not stop and he had slept with her. Dr. Hiller found two scratches on Kimberly in the vaginal area which were healing. Dr. Hiller's opinion was that these scratches or lacerations were not self imposed. She felt that sometime between July 13 and July 20, 1992 Kimberly had been sexually abused. Dr. Hiller testified that she had never previously seen a child act like Kimberly had relative to the plaintiff. CT Page 6420
Many of the witnesses testified that Kimberly was definitely afraid of her father (plaintiff) and did not want anything to do with him. Ms. Richard felt that if Kimberly were to have contact with the plaintiff or be allowed to receive gifts from him, that it would cause her problems.
Attorney Thomas P. Pettinicchi was previously appointed as attorney for Kimberly. He recommended to the court that custody of Kimberly be awarded to the defendant (mother) and that the plaintiff (father) should have no contact with the child for a period of one year but that the plaintiff should be allowed to send gifts and letters to Kimberly during that time.
After hearing this matter in which both parties testified, the court awards sole custody of Kimberly Kilcran to her mother, Sherry Lynn Fields. The court does not award any custody or visitation rights relative to Kimberly to her father, Barry Kilcran. The court further orders that the plaintiff father shall have no contact whatsoever with his daughter Kimberly until further order of the court. The plaintiff father shall not give any gifts to his daughter Kimberly nor write any letters to her until further order of the court. The defendant mother shall see to it that Kimberly shall continue her treatment with Linda Foster of the Child Guidance Clinic in Waterbury for as long as Ms. Foster feels such treatment is necessary. Ms. Foster now sees Kimberly on a weekly basis. Mrs. Fields shall also see to it that Kimberly keeps her scheduled visits at the Pediatric Ambulatory Care Unit at St. Mary's Hospital in Waterbury, Connecticut or any other medical unit that may be required to meet Kimberly's needs.
The court also orders that Sherry Lynn Fields continue with her weekly counseling at the Sexual Abuse Crisis Unit. In addition, if either Linda Foster or the Waterbury Superior Court Family Relations Office determines that Kimberly Kilcran or Sherry Lynn Fields (defendant) needs additional or different therapeutic or medical treatment, then they shall obtain the same immediately.
Barry Kilcran is presently seeing Pamela Pratt, a social worker, every two weeks. The court orders Mr. Kilcran to continue to see Ms. Pratt until she determines that there is no further need to do so. Mr. Kilcran also stated that he has seen Doctor Sidney Horowitz four or five times in the past two years. If Pamela Pratt or Doctor Horowitz or the Waterbury Superior CT Page 6421 Court Family Relations Office feels Mr. Kilcran should see Doctor Horowitz on a more frequent basis, then he is ordered to do so. In addition, Mr. Kilcran shall receive any other treatment of any kind, medical or otherwise that the Waterbury Superior Court Family Relations Office feels he needs.
It is the opinion of the undersigned that this matter as it relates to the custody and visitation of Kimberly Kilcran should not be given another hearing for a minimum of one year from this date even if the plaintiff files motions for same unless there is some compelling reason(s) therefore.
WILLIAM J. SULLIVAN, J.